On this morning's docket is People v. Dominique Peoples. And we have Wesley Hanson for the appellant. And we have Mr. Richard Cook for the appellate. And you may begin, Mr. Hanson. Jim Hanson for Dominique Peoples. I was appointed to this case on appeal so I was not involved in the trial court but it was a case brought in front of the Sexually Dangerous Persons Act against Dominique Peoples in connection with whether he suffered from a mental disorder which indicated he had a criminal propensity to commit sex offenses in the future. When I first got the case I looked at the record and tried to determine the basis for which it was brought in. The court noted it was brought on a disorderly conduct charge. That's what the underlying offense was that gave rise to this act. In that trial, the record is long enough, but basically my client was observed outside a house, peeking through windows, perhaps taking pictures on a phone, although they did not find this picture because the phone was locked, and allegedly masturbating. When I say allegedly masturbating, one of the issues that I'm bringing before you is that there's videotapes that show exactly what everybody saw. I watched them and I did not, of course I'm not the fact finder, but I did not see without some doubt that that was going on. Now it doesn't surprise me that you might be sexually aggrieved in this young man's history, but in this proceeding, I submit to you that there would have to be no doubt that not for the conviction of disorderly conduct, because you could be guilty of disorderly conduct just for peeking through the window, but for purposes of a sex offense, I submit to you that's contemplated by the Bingham Supreme Court case, it has to be some offense of a sexual nature that requires touching. And I'll get into that a bit later in my argument. But something that was raised in my brief that could be resolved pretty easily was there was no specific finding as required by the Masterson case that there has to be a finding that there was the likelihood of future criminal conduct. And what was particularly surprising to me was that this young man had been incarcerated in Jefferson County two or three years before this petition was brought against him and an action brought under the Sexually Violent Persons Act was brought against him and it was submitted to a jury. And in that proceeding, there were three expert witnesses that evaluated this young man as a part of that proceeding. And in that proceeding, all three of them found him not to be a person with a mental disorder that would demonstrate a propensity to commit a sexual crime. Now, as defined under the Bingham case, sexual crimes are defined as a touching or somewhat of an abiding will and just peeking through a window is not a sexual crime that would be sufficient to have a person deemed to be guilty of being a sexually violent or sexually dangerous person. But in that hearing, the attorney in the trial court offered that expert testimony to basically contradict the current experts who both found that my client was a person who had a mental disorder that could result in a propensity to commit a sex crime in the future. But the judge denied that motion and requested that the court consider those reports. Now, the rule of law is that anything that's relevant and meets foundational requirements is admissible but tends to show the opposite of the issue that's being presented. In this case, they were on all fours. They had evaluated the same young man with all the same criminal history. The only other event that happened between the earlier trial and this trial was this act that was a part of this record right here, the peeping in the windows and the alleged possible masturbation outside the house. Testimony of the trial was that no one saw him masturbate because they couldn't see out the window to him. But the videotape, which would allow the court to determine if he did or did not masturbate on the porch, was relevant to the expert testimony about whether or not this young man would commit sexual acts. Doesn't the statute only allow defendants to have his own experts if it can be shown that there's bias or prejudice? No, you're correct. My point is that it's relevant evidence that if there's no evidence and these three other experts rule in the opposite way, that tends to discredit if you believe the other experts. And it was in a contested proceeding, so we had the confrontation and all those issues taken care of. Do you have any cases that would support that? In fact, the Bingham case is the only one that speaks to the touching aspect of this event. In other words, what is the subsequent event that it alone could give rise to? I mean, it almost strikes me as being, it's not really double jeopardy, but looking at the same set of facts two different times in the civil matter, I call it the kind of the race judicata, you know, this evidence was found to mean this. And the only additional event is the event I'm trying to share with you, the event that took place outside this house. And while it's certainly repulsive, it's consistent with the earlier experts that said it was exhibitionism and voyeurism and things like that, but they did not believe it goes to the level of being accurate on. Although my client had one prior conviction involving a touching event, and this did not involve a touching event, but all of them, all the experts, all five, the three that were before and these two, they all were aware of all the same criminal history and it's recited in the brief. But essentially all three of the experts that were two years earlier on the same set of facts said that he basically did not demonstrate these pedophilic disorders, but he was anti-social, voyeuristic and futuristic. These terms, but they clarified those in some respects that they were not involved in acting out, acting out. So it's a young man. And so the crux of my argument is two points. One is that there was no touching and I believe that the sexually dangerous person that requires some act of touching, touching a contact as opposed to, you know, like in this case, voyeurism and or public indecency or something like that, which wasn't charged. It just seemed to me that there would be some requirement to show something more, to relitigate all the same issues that were just litigated three years earlier. No additional facts presented that were presented earlier. It's almost, it's almost a yes. The point is taken is that if he's not entitled, if he's not entitled as one of the experts, is he entitled to refer to some prior testimony by people that weren't his experts? I submit to you, it ought to be relevant, it ought to be used to allow this young man not to be incarcerated based on standing outside of the house and perhaps masturbating. Although I ask you if you would look at the tapes yourselves, if you have, I don't know if you have or have not had the opportunity to do that yet. I cannot see, I cannot see clearly without any doubt those acts. Now maybe your eyes can see and hear the fact, you know, the chronicles of fact finding, but there has to be no doubt that what's happening is happening. I submit to you. How old was he, first of all? I can't remember. It seems like he's 20 now, but I'm a positive judge. He's saying just 20. I don't want to represent anybody, I don't want to. There was testimony that the woman, Car 9, believed that he had been in her home masturbating there as well. Well, no, there was testimony that she thought somebody had been in her home, but there was no testimony, there was no evidence collected or nothing there other than there was testimony about a key that was moved and shoes that were moved and things like that. But whether or not he was in the home, he was not charged with home invasion. He wasn't charged with anything. So it could have been, we can speculate about those things, but I was trying to, you know, I think the young man is troubled, certainly, and I'm not suggesting he's not, but there were some reports in there about he would display in front of correctional officers and so on and so forth. Much of it supported the diagnosis of voyeurism, and I can't remember all these terms, judges, but terms that manifest a desire to see somebody, see you do something or what have you. And there was actually one of the experts that was saying that that was more indicative of what he did. He tried to gather attention or whatever, but he wasn't acting upon it, you know, other than the event where he did act, but it wasn't as violent. It fits the requirement of the statute as to one act, but this new act is where I'm having my difficulties in trying to share with you my argument, and I'm maybe not doing it very well. But the argument is that under the Sexually Dangerous Persons Act, you have to have some event that tends to suggest a mental disorder and a criminal propensity to act on it. And I just don't think it's beyond any doubt here that that's what was proven. Thank you, Your Honors. Thank you. Let's see, Mr. Cook. Good morning, Your Honors. Good morning. May it please the Court, Counsel. In this case, the State was only required to prove, the only issue on appeal here is that whether or not a respondent has a criminal propensity to commit sex offenses. And we submit that the State provided more than sufficient evidence to meet that requirement. Now, the only thing we have to prove to do that is, under the SDPA, the Court is required to appoint two independent evaluators to assess a respondent. And here those evaluators are free to rely on any evidence that is ordinarily relied on by experts in the field. Should they have relied on the three prior, the report of the three prior experts? They're certainly free to do so. Do you know whether or not they did consider that? I do not know if they considered that or not. I do know, though, that they did interview the respondent. They did conduct actual assessments of the respondent. And they did consider his criminal history and his prior misconduct in prison. And based on all that, they both found that the respondent had a criminal propensity to commit sex offenses. What do you have to say in response to Mr. Hansen's argument about the Bingham case and the lack of a sexual offense involving touching in this instance? Well, here we would, we argue that, you know, people v. Bingham really relied on the term sexual conduct in analyzing what a sex offense was only after they were unable to find the term sex offense defined under the criminal code. And as you've seen in our brief, we have presented a definition for sex offense under the criminal code. And it's defined as any violation of Article 11, which is entitled sex offenses. So you're saying that masturbation alone would be adequate? Probably not masturbation alone. I think in the context of, for instance, one of his five crimes that was admitted at trial was sexual exploitation of a child. You know, exposing yourself in front of people or masturbating in front of other people without their consent, you know, that sort of thing, we argue, is certainly a sex offense. And we're relevant here in determining that the respondent had a criminal propensity to commit sex offenses. So. So, yeah, under that definition, both evaluator opinions were more than sufficient to meet the state's burden. And with respect to the. With respect to his underlying crime in this case, you know, it's not necessary that that the underlying crime where they initiate the STPA proceedings for that crime to necessarily be a sex offense. More importantly, though. If it weren't, though, and it has no relation to a sex offense, how aren't you, in fact, then just re-litigating the crime? What was litigated in the past and he was found not to have dangerous propensities? Well, in this case in particular, the particular offense, although it is not, you know, there is some debate about whether or not he was masturbating outside the home. You do have a credible trial testimony where the witnesses, you know, Ms. Carnine found who believed he was masturbating and you have the detective in that case also found that. But the evaluators also considered those videos and found that it's particularly relevant here because it bore similarities to his prior crime for sexual exploitation of a child where he would, you know, he first knocked on the door of the home, attempted to see who was there. He knew there were two girls there and after one had left, went back to the home and again tried to get into the house. And here you have a similar situation where he's, you know, again, he's lingering outside the house and later Ms. Carnine testified that he knocked on the door and did attempt to get inside. So it's, while the crime itself is perhaps debatable whether it was a sex offense, it certainly bore similarities to his prior offense and that is relevant here. Turning to the other issue that was mentioned regarding the sexually violent person's evaluations, under the STPA the court is only required to appoint two independent evaluators and, you know, along those lines the Illinois Supreme Court has specifically held that you, neither the state nor the respondent are permitted to submit their own independent psychological evaluations. Except that he's got a little different twist on this and it's, he's only asking as an alternative to allow those experts to testify but he wants to bring in the prior reports for consideration also. What's your response to that? At this juncture the issue isn't necessarily whether or not it's relevant, it's only whether or not it's admissible. And outside of those two evaluations the only other evidence that is envisioned under the statute is evidence of prior crimes. And those were the only things presented here. So if you would like to present that information it is, down the road it is available if he applies for a recovery proceeding in which case the respondent is free to submit whatever evidence he wants. So that would be the appropriate juncture. And that's, how often is he allowed a recovery proceeding? Is it annually? I think it's every two years if you apply and it's denied. I think if there are no further questions we would ask this court to defer to trial court. Okay. Thank you Mr. Gersh. Thanks. And Mr. Hanson. Thank you. I also want to draw the court's attention to the fact that the two evaluators in the current case, I say the current case in case we're here on appeal, Dr. Stanislaw met with my client one hour and Dr. Suarez met two hours and 45 minutes. In the prior exhibit that was tendered, Dr. Kirk Rutherford met for six hours. Dr. Weidel met for one hour and Dr. Schlechter, I could not find in the record how long they met, but I suggest to you they had equal amount of time to review the records in the prior matter. Mr. Hanson, evidentiary ruling such as this, wouldn't that be an abusive discretion standard review? I think it would be. My feeling about it, because I read, this is my first case involving this kind, but it said it's in civil in nature it would require a heightened level of proof. Well in civil cases I've been involved in, the law of the case is you can't just go back and redo it again unless there's, if you have the same parties, and here we have the same parties involved with the state on behalf of, the only difference was the facts that were presented. Now certainly if a guy commits another act, the law of the case could change because we have a But isn't that what they're saying? Well they're saying that the act of that A11, peeping Tom, is sufficient. Yeah, I know that, I know. And I'm saying Bingham says otherwise, or I'm suggesting to you that Bingham says otherwise. And it makes sense, what I think Bingham is holding, what I think is holding, it makes sense. It's got to be something more than just another crime. You have to speak to it. I mean we certainly wouldn't believe that that additional information would give rise to that kind of a deal, but this is kind of borderline, but they do talk about crimes that are more alert as opposed to, I don't know how to describe it. What about the fact that like the prior instance where he was charged with attempting to exploit the two young girls, that here in the current event he did try to get into the house according to the testimony. Well, if you look at the record, he wanted to get in a metaphone, he didn't beat the door down, I don't think it was intentional. Well, I know, yes. He wasn't trying to force himself in. I'm sorry, Judge. He was attempting to get into the house and had been ringing the doorbell a number of times and sounded fairly urgent. There is no, well I'm not going to say there's no, the history of him in violence, overt violence, as presented by all the experts, it just isn't really there other than that one event where he put a hand on, took a hand away. The suggestion, the inference to be drawn that he was trying to get in the house to forcibly act upon, that is not a reasonable inference given the totality of the evidence and the circumstances I submit, but then again that's within somebody else's. And in this case, in this case I just feel like that that's not what was contemplated by the statute. And the two statutes are to be read somewhat in connection with each other. I cited something in my case, a statement made where statutes are in para, you know, some Latin word that I can't remember, that they should be construed for the purpose. And the purpose was to prevent people who have a known mental disorder that have a propensity to commit, I hate to say violence because that's not what's in the statute, but some overt sexual crime as opposed to a passive sexual crime. Of course according to the case, the cases don't say that, but being in hell it required some touching, and touching could be through clothes and whatever, but I think that's a reasonable place to start. You know, the fact that he's a peeping Tom, which is a term we used to use when I was younger, or has some overt need to visualize and see things or have people see him, while that may be a sexual obediency, it doesn't rise to the level to incarcerate you from now until you get out. I ask your honors to look at the prior testimony in light of the current testimony. It's just such a broad swing based on the same set of facts. It just doesn't seem to fit within what I think, and certainly the civil court, I hate to relegate everything on a minor issue that doesn't seem to be substantive, but if that's the construction that is given, then I lose. But it's important to this young man who was incarcerated. And this has nothing to do with how you've signed the record. I have been appointed to some of these cases, and the amount of likelihood of good treatment while you're in it is somewhat unknown. So thank you, your honors. Thank you both, Mr. Harrison and Mr. Cook. Very interesting case, and we will take matter under advisement and under ruling in due course.